UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ORLANDO JOHNQUIL McCRAE,
an individual,

Case No.: 2:12-cv-00359-AC

                    Plaintiff,

FINDINGS AND
RECOMMENDATION

          v.

G. RANSIER, S. FRANKE, J. BURCHETT;
individually and in their official capacities;

                    Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

       Plaintiff Orlando McCrae ("McCrae"), an inmate at Two Rivers Correctional Institution

("Two Rivers"), filed a *pro se* civil rights action against three Two Rivers staff members,

individually and in their official capacities; Gregory Ransier ("Ransier"), Steven Franke

("Franke") and James Burchett ("Burchett") (collectively, the "Defendants"); under the First

and Fourteenth Amendments of the United States Constitution.  McCrae alleges Defendants

violated his rights to freedom of speech, freedom of association, due process, and access to the

courts by confiscating his legal documents.  McCrae further alleges Defendants retaliated against him for filing a grievance with the Oregon Department of Corrections (the "Department").

Currently before the court is Defendants' motion for summary judgment on McCrae's First and Fourteenth Amendment claims.  Because no triable issue of fact exists as to whether Defendants violated McCrae's constitutional rights, Defendants' motion for summary judgment should be granted.

*Preliminary Procedural Matter*

In a motion for summary judgment, if the movant establishes he is entitled to judgment as a matter of law, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted).  On March 25, 2013, Defendants filed their motion (#48) for summary judgment.  On April 1, 2013, this court issued a Summary Judgment Advice Notice (#55) to McCrae instructing him on the nature of Defendants' motion and how to respond.  On April 1 and 18, and on August 9, 2013, McCrae filed motions for extension of time (#57, #62, and #67) to file his opposition to Defendants' summary judgment motion.  The court granted each of these requests (#58, #63, and #68).  Additionally, on November 25, 2013, the court granted McCrae's letter request (#70) for the return of the documents he submitted with his complaint to allow him the opportunity to refer to this evidence while preparing his opposition to the pending motion for summary judgment.  The record shows that McCrae's original hard-copy complaint and exhibits were mailed to McCrae on November 25, 2013.  The court again extended McCrae's response deadline and allowed him until December 27, 2013, to file his opposition.

Ultimately, McCrae failed to file a response to Defendants' motion.  As such, McCrae's opposition rests solely on the contents of his initial pleading.  However, the court can consider neither McCrae's complaint, nor the complaint's supporting exhibits, when ruling on Defendants' summary judgment motion.  McCrae's complaint is unverified: it does not contain a sworn statement declaring, under penalty of perjury, that his allegations are true and correct in accordance with 28 U.S.C. § 1746.  Given this omission, the court cannot treat McCrae's complaint as an affidavit opposing Defendants' summary judgment motion.  *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) (stating that a verified complaint may be used as an opposing affidavit under Rule 56 to the extent it expresses personal knowledge of admissible facts but an unverified complaint is insufficient to counter a summary judgment motion supported by affidavits).  Furthermore, McCrae failed to lay the proper foundation to authenticate that his complaint's supporting exhibits are what he purports them to be.  The court cannot consider unauthenticated materials when considering Defendants' motion for summary judgment.  *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment.").  Accordingly, the following facts are based exclusively on Defendants' representations, which are not in dispute.

*Background*

On October 7, 2011, McCrae was being housed in Two Rivers' Disciplinary Segregation Unit ("DSU") when the fire suppression system in his cell activated and sprayed water.  (Ransier Decl. ¶ 4; Burchett Decl. ¶ 4).  That same day, McCrae filed a grievance with the Department claiming that his legal documents had been damaged by the water.  (Burchett Decl. ¶5; Ransier Decl. ¶5).

On October 18, 2011, Ransier, a correctional officer, saw McCrae spreading his paperwork on the floor of his cell as though he was drying it out. (Ransier Decl. ¶ 6). Ransier noted the documents were still wet, even though the sprinklers had discharged ten days prior. (Ransier Decl. ¶ 6). Ransier grew suspicious that McCrae was tampering with the evidence at issue in his grievance. (Ransier Decl. ¶ 6). He reported his observations to the unit captain who instructed Ransier to confiscate the documents for the pendency of the Department's grievance process. (Ransier Decl. ¶ 6).

Two Rivers held McCrae's property in an evidence locker. (Ransier Decl. ¶ 6). McCrae could still gain access to the paperwork if he submitted written proof that he had an "active, pending law suit or court deadline." (Ransier Decl. ¶ 7). McCrae failed to do so during the remainder of his time in DSU. (Ransier Decl. ¶ 8). Twin Rivers released McCrae from DSU to rejoin the general population on November 6, 2011. (Burchett Decl. ¶ 7).

On November 9, 2011, Burchett removed the documents from the evidence locker and met with McCrae to look through them. (Burchett Decl. ¶ 8). McCrae conceded that the papers were minimally damaged — they had minor ink smears and discoloration — and asked if he could sign for their return. (Burchett Decl. ¶ 8). Burchett told McCrae the papers had to remain in the Department's possession until McCrae's grievance was resolved. (Burchett Decl. ¶8).

On November 18, 2011, Twin Rivers placed McCrae back in the DSU for misconduct. (Burchett Decl. ¶ 7).[1] On December 14, 2011, Burchett informed McCrae that his paperwork would be moved from the evidence locker to his DSU storage bin. (Burchett Decl. ¶ 9). At the time, McCrae was on close supervision and not permitted to keep personal property in his cell.

---

[1] He remained there until May 10, 2012, when he was transferred to the Oregon State Penitentiary. (Burchett Decl. ¶ 7).

(Burchett Decl. ¶ 9).   From thereon out, McCrae had access to his property, pursuant to segregation rules.  (Burchett Decl. ¶ 9).

*Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a) (2013).  Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant bears this burden even if the non-moving party fails to file an opposition.  *Cristobal v. Siegel*, 26 F.3d 1448, 1494-95 (9th Cir. 1994).  If the moving party fulfills that burden, the nonmoving party must go beyond the pleadings to identify facts that show a genuine issue for trial.  *Id.* at 324.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements.  *Hernandez v. Spacelabs Med., Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003).  Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011).  All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  *Sankovich v. Life Ins. Co. of North America*, 638

F.2d 136, 140 (9th Cir. 1981).  However, facts must be "viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*Discussion*

Defendants move for summary judgment against McCrae's claims on four grounds:  (1) the Eleventh Amendment bars federal suit against Defendants in their official capacities; (2) qualified immunity shields Defendants from liability in their personal capacities; (3) *respondeat superior* is not a viable theory of liability for a claim under 42 U.S.C. § 1983; and (4) Defendants did not violate McCrae's constitutional rights.

I.    <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment of the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The United States Supreme Court has long held that the Eleventh Amendment bars private individuals from bringing suit against unconsenting states in federal court.  *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989) (stating the Eleventh Amendment bars litigants from bringing Section 1983 claims against states for alleged deprivations of civil liberties unless the state waives its immunity); *Edelman v. Jordan*, 415 U.S.

651, 662-63 (1974) ("[T]his Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").

State officials share in the Eleventh Amendment's protection.  A suit against a state officer in his official capacity is equivalent to a suit against the state office itself and thus "no different from a suit against the State." *Will*, 491 U.S. at 71.  "Such suits are, in essence, actions against the governmental entity of which the officer is an agent." *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201-02 (9th Cir. 1988) (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982)) (internal quotations omitted).  Because a judgment against a state agent would have the same adverse effect on the state as if it were directed at the state itself, the state's sovereign immunity extends to protect individual officials from suit.  *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991).

Accordingly, the Eleventh Amendment bars McCrae's suit against Defendants in their official capacities.  Oregon's sovereign immunity protects Defendants from McCrae's claims against them as official state actors.  To the extent McCrae brings suit against Defendants in their official capacities, Defendants' motion for summary judgment should be granted.

II.    Respondeat Superior

Defendants move for summary judgment on all claims alleged against Franke because the undisputed facts indicate that Franke was not personally involved in the events at issue. *Respondeat superior* is not a viable theory of liability under Section 1983.  *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978).  A defendant is liable under Section 1983 only for alleged constitutional deprivations in which he personally participated.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Furthermore, a supervisor is not culpable for his subordinates' constitutional violations absent evidence that the supervisor participated in the

violation, directed the violation, or knew of the violation and failed to act to prevent it. *Id.* at 1045. There must be a clear causal connection between the supervisor's conduct and the harmful result indicating that the supervisor knew or reasonably should have known that his action or inaction would foster the constitutional injury. *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991), *cert. denied*, 502 U.S. 1074 (1992).

Here, McCrae appears to name Franke as a defendant solely because of his position as Superintendent of Two Rivers. (Compl. 3). The undisputed facts suggest that Franke was neither involved in, nor even aware of, the events giving rise to McCrae's suit. Franke's supervisory status alone is insufficient to impose liability on him. Because there is no genuine issue of fact suggesting any other basis for McCrae's suit against Franke, the court should grant Defendants' motion for summary judgment on all claims against Franke.

III.    Right to Court Access

Defendants move for summary judgment on McCrae's claim that Defendants violated his right to court access by confiscating his legal documents. Prisoners have the constitutional right to "meaningful" access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."); *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (describing "meaningful" access to the courts as the touchstone of the right described in *Bounds*). As with all other cases and controversies, a prisoner must demonstrate an alleged violation of his right to court access caused him "actual injury." *Lewis*, 518 U.S. at 351. The Supreme Court has delineated a narrow definition of "actual injury" in the prison context: the prisoner must demonstrate that the state hindered his ability to raise a nonfrivolous legal claim that aimed to either challenge his underlying conviction or enforce his basic constitutional rights. *Id.* at 353-54.

McCrae's court access claim fails for two reasons. First, McCrae has failed to present sufficient facts to suggest he sustained an actual injury from Defendants' actions. From the record, it is not clear what, if any, legal claim was frustrated. This court does not have sufficient information to make the necessary inquiries into whether the underlying suit was nonfrivolous or whether it raised a permitted claim. Second, there is no evidence that Defendants prejudiced McCrae's unspecified legal claim. To the contrary, the undisputed facts show Defendants took measures to ensure the confiscation would not stymie McCrae's legal actions. Defendants instructed McCrae that he could gain access to his legal paperwork by submitting written proof that he had a pending lawsuit with a court deadline. McCrae failed to do so. Given the lack of evidence of any legal claim adversely affected by Defendants' actions, summary judgment against McCrae is appropriate.

IV.    Freedom of Speech

McCrae claims that Defendants violated his First Amendment right of free speech by confiscating and retaining his legal paperwork, thereby hindering his ability to communicate about pending legal matters. In analyzing such constitutional claims, the Court has expressly declined to strictly scrutinize prison officials' "day-to-day judgments." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Otherwise, federal courts' second-guessing of everyday administrative decisions could "seriously hamper [prison officials'] ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* Accordingly, the question before this court is a narrow one: is there a genuine dispute of material fact as to whether the Defendants' actions were rationally related to a legitimate penological interest? *Id.* Four factors are relevant to this inquiry: (1) whether there is a logical connection between the prison's actions and a legitimate governmental interest; (2) whether the inmate has

alternative means of exercising his asserted right; (3) to what degree accommodation of the right would impact guards, other inmates, and prison resources generally; and (4) whether there are any obvious, ready alternatives to the action taken. *Id.* at 89-90.

There is no dispute as to any of these factors: all evidence suggests that Defendants did not infringe on McCrae's constitutional right to free speech.  As to the first consideration, the parties do not dispute that McCrae's papers were the subject of a Departmental grievance, Defendants had a valid interest in preserving pertinent evidence, and McCrae appeared to be tampering with said evidence.  There is a logical connection between Defendants' interests and its confiscation of the subject of McCrae's complaint.  In regards to the second factor, Defendants ensured that McCrae had continued access to his papers for pending legal suits.  McCrae did not take advantage of this alternative, but it was available nonetheless.  As to the final two factors, the undisputed evidence suggests that Defendants fully accommodated McCrae's right to free speech — allowing him continued access to his correspondence and legal work — thus invalidating the need for an inquiry into the probable effects of such an accommodation or ready alternatives.  Because no material fact is in dispute regarding whether Defendants violated McCrae's freedom of speech, summary judgment is appropriate.

V.     Freedom of Association

McCrae also asserts that Defendants violated his First Amendment right to freedom of association.  Though not expressly enumerated in the First Amendment's text, the freedom of association is a necessary companion to the amendment's guarantees.  *See Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984) ("An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those

ends were not also guaranteed."). It protects associations of people engaged in expressive activity. *Boy Scouts of America v. Dale*, 530 U.S. 640, 655 (2000). For instance, the Supreme Court has held that the Boy Scouts is an "expressive association" — a group disseminating certain values — which warrants constitutional associational protections. *Id.* at 656. More similar to the situation at hand, the Ninth Circuit recently hypothesized that "inmates engaged in collective civil rights litigation conceivably could claim to be expressively associating." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1246 (9th Cir. 2013).

Here, McCrae fails to identify any association affected by Defendants' actions. There is no evidence that McCrae was involved in any collective effort. Rather, the undisputed facts suggest that he was independently involved in legal preparation. Accordingly, there is no evidence that Defendants infringed on McCrae's constitutional right to associate.

Moreover, the Supreme Court has identified the right to associate as "among the rights least compatible with incarceration" and, accordingly, held that some curtailment of the freedom of association is unavoidable in the prison system. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). A prison can impinge on inmates' freedom of association without liability so long as its imposition is rationally related to a legitimate penological interest. *Id.* at 132. The Court accords "substantial deference" to prison administrator's professional judgment. *Id.* As such, even if McCrae had identified an expressive association affected by Defendants' confiscation, Defendants' cited interest of maintaining evidence to support McCrae's grievance is a legitimate reason for retaining his paperwork. In light of the substantial deference due to Defendants and because there is no evidence indicating that any association was affected by the events leading to McCrae's suit, this court should grant Defendants' motion for summary judgment.

VI.    Retaliation

Defendants move for summary judgment on McCrae's claim that Defendants retaliated against him for filing a grievance with the Department.  Prisoners have the First Amendment right to file internal grievances and to pursue legal action in courts.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).  "Without these bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices."  *Rhodes*, 408 F.3d at 567.  It is unconstitutional for an official to retaliate against an inmate for exercising these First Amendment rights.  *Id.*  A prisoner will prevail in an action against a state official for First Amendment retaliation if he proves: (1) "a state actor took some adverse action against [him] (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Id.* at 567-68.

There is no dispute that Defendants confiscated and retained McCrae's paperwork in order to serve its legitimate penological interest in safeguarding evidence.  Defendants did not take adverse action against McCrae because of his First Amendment activity.  Rather, Defendants acted to uphold the integrity of McCrae's grievance and the established grievance process.  Moreover, there is no evidence that Defendants' actions stifled McCrae's exercise of his constitutional rights.  McCrae had continued access to his paperwork for pending suits.  Consequently, this court should grant summary judgment in Defendants' favor on McCrae's retaliation claim because there is no disputed issue for trial.

VII.    Due Process

Defendants move for summary judgment on McCrae's claim that they violated the Due Process Clause of the Fourteenth Amendment by confiscating and retaining his paperwork.

Defendants cannot deprive McCrae of his property or liberty without due process of the law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  However, as an inmate, McCrae's rights are necessarily constrained by the correctional system's interests.  *Id.* ("[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.").

In order to establish that Defendants' temporary restriction of his privileges triggered a liberty interest, McCrae must establish that Defendants imposed an "atypical and significant hardship on [McCrae] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Here, there is no evidence that McCrae suffered any hardship from Defendants' action.  The undisputed facts do not indicate that McCrae's legal claims were hindered by the relocation of his paperwork.  Nor do they show he was harmed in any other way.  As such, there is no evidence that Defendants' confiscation constituted a liberty deprivation warranting Fourteenth Amendment protections.

Nor does McCrae have a viable property interest on which to base a due process claim. *Bd. Of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.").  Oregon Administrative Rule 291-117-0120(3) provides "[a]n inmate shall not alter or otherwise tamper with . . . any personal property item."  It furthers that "[u]nauthorized alteration . . . may result in confiscation."  Since the undisputed facts establish that Ransier concluded McCrae likely tampered with his papers — dampening them days after his cell's sprinkler system discharged — McCrae lost his entitlement to control said property.  Due process was not implicated by Defendants' confiscation.  Accordingly, because there is no evidence that Defendants deprived

McCrae of any liberty or property interest, this court should grant summary judgment on McCrae's Fourteenth Amendment claim in their favor.

VIII.    Qualified Immunity

Defendants invoke qualified immunity in their personal capacities. *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) ("An official sued in his personal capacity, although deprived of Eleventh Amendment immunity, may assert a defense of qualified immunity."). Qualified immunity shields government officials from liability for conduct that does not clearly violate another's established rights. *Maxwell v. County of San Diego*, 697 F.3d 941, 947 (9th Cir. 2012). It insulates officials from liability for even legally deficient decisions so long as, under the circumstances, it was reasonable for the official to misconstrue the law. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). To determine whether an official can appropriately invoke qualified immunity, the court must consider (1) whether the alleged facts establish that the official violated the plaintiff's right; and (2) whether the right was "clearly established" — whether a reasonable official would realize his actions violated the right — at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"). The court has discretion in deciding which inquiry to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Defendants are entitled to qualified immunity because, as detailed in the sections above, the undisputed facts establish that Defendants did not violate McCrae's rights. Moreover, there is no evidence suggesting that a reasonable official would believe Defendants actions to violate

McCrae's rights.   As such, summary judgment is appropriate in favor of Defendants in their personal capacities.

*Conclusion*

For the reasons set forth above, Defendants' motion for summary judgment (#48) should be GRANTED.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **January 30, 2014**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 15th day of January, 2014.


_____/s/ John V. Acosta_____
        JOHN V. ACOSTA
United States Magistrate Judge